In the Matter of the Claim of JAMES R. KNAPP, Respondent, against SYRACUSE UNIVERSITY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued December 2, 1954; reargued February 21, 1955; decided March 10, 1955.

*John L. Madison* for appellant. Services performed for Syracuse University, an educational corporation, are excluded from the coverage of the Disability Benefits Law, and the employer, Syracuse University, is exempt from the provisions of that law. (*Matter of Rathscheck,* 300 N. Y. 346; *McCluskey* v. *Cromwell,* 11 N. Y. 593; *Matter of Trustees of Columbia Univ.* v. *Herzog,* 269 App. Div. 24, 295 N. Y. 605; *Matter of Guardian Life Ins. Co. of America* v. *Joseph,* 272 App. Div. 481; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634; *People* v. *Olah,* 300 N. Y. 96; *Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *Matter of Russomanno* v. *Leon Decorating Co.,* 282 App. Div. 18, 306 N. Y. 521.)

*John J. Quinn, Wendell P. Brown* and *Roy Wiedersum* for Workmen's Compensation Board, respondent. Ample evidence supported the finding of the Workmen's Compensation Board that claimant was entitled to disability benefits under the Disability Benefits Law (Workmen's Compensation Law, art. 9), and the award was proper. (*Matter of Koehler* v. *Roosevelt Field,* 282 App. Div. 296; *Matter of Shapiro* v. *Central Poultry Corp.,* 284 App. Div. 309; *Matter of Kluczynski* v. *Hospital Service Corp. of Western N. Y.,* 282 App. Div. 276; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Matter of Schmidt* v. *Wolf Contr. Co.,* 269 App. Div. 201, 295 N. Y. 748; *Matter of Moskowitz* v. *La Guardia,* 183 Misc. 33, 268 App. Div. 918, 294 N. Y. 830; *Matter of Commissioner of Taxation & Finance* v. *Nu-Art Adv. Co.,* 271 N. Y. 112; *Matter of Petrie,* 215 N. Y. 335; *Matter of Moore* v. *Lehigh Valley R. R. Co.,* 169 App. Div. 177, 217 N. Y. 627; *Matter of Altschuller* v. *Bressler,* 289 N. Y. 463; *Matter of Daus* v. *Gunderman & Sons,* 283 N. Y. 459; *Matter of Trustees of Columbia Univ.* v. *Herzog,* 269 App. Div. 24, 295 N. Y. 605.)

DESMOND, J. In this, as in *Matter of Russomanno* v. *Leon Decorating Co.* (306 N. Y. 521), we should take the Disability Benefits Law (Workmen's Compensation Law, art. 9) as we find it, and leave for legislative attention any seeming inequities, or unevenness of coverage.

Claimant, when he fell ill, was employed as a painter in an office building in downtown Syracuse, N. Y., owned but not occupied by Syracuse University, being leased by the university to various tenants. Disability benefits are, under the statute,

available to " Employees in employment of a covered employer " (Workmen's Compensation Law, § 203), so claimant, to prove eligibility, had to establish each of those requisites. But his insuperable difficulty is that his employment was, by precise language, specifically excluded from the coverage of the law. Subdivision 6 of section 201 says that " the following shall not be deemed employment under this article: services performed for * * * any corporation * * * operated exclusively for * * * educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual ". Since Syracuse University is such a corporation, the quoted language has exactly the same meaning, as to this claim, as if the Legislature had said that " services performed for Syracuse University shall not be deemed employment under article 9 ".

It is urged upon us, however, that what the statute really means is that employees of an educational corporation are excluded only where their services " are in connection with the institution's purely educational activities and for an exclusively educational purpose ". The answer to that is that not only is no such idea anywhere expressed in the statute, but it is demonstrable that the Legislature had no such intent. Originally, by the Workmen's Compensation Law itself, all employees of educational corporations were made ineligible for benefits, just as is now the case under the Disability Benefits Law. In 1929, however (see L. 1929, ch. 702), the Legislature decided to limit this exclusion (from workmen's compensation proper) to the strictly educational employees of educational corporations. This the Legislature did by excepting, from the included employments, the employment of " persons engaged in a clerical, teaching or nonmanual capacity in and for a religious, charitable or educational institution " (Workmen's Compensation Law, § 3, subd. 1, group 18). In other words, the Legislature originally withheld workmen's compensation from all employees of educational corporations, then lifted the bar as to manual employees of such corporations. But, in new article 9, which we are construing here, the Legislature again barred, from disability benefits coverage, any and all employment by an educational corporation, without distinction between educational and noneducational employees, such as was inserted

in the older act in 1929. The conclusion is inescapable that in the new Disability Benefits Law no such distinction was either expressed or intended.

Another equally cogent demonstration of actual legislative intent is available. In 1946 (L. 1946, ch. 463), after the decision in *Matter of Trustees of Columbia Univ. v. Herzog* (295 N. Y. 605), the Legislature decided to give collective bargaining rights to those employees of educational institutions, whose services (like those of the present claimant) had to do with the operations of buildings rented out or otherwise used for profit. To accomplish that, there was added to section 715 of the Labor Law the careful statement that the previous exception of employees of educational corporations was not to apply to such employees when their services were " performed in connection with the operation of a building owned by such an association or corporation and used or occupied as a commercial or industrial enterprise operated for the production of profit   *   *   * and which employees are not engaged in the   *   *   * educational   *   *   * activities of such association or corporation." Thus, we have two instances where the Legislature, intending to distinguish between educational and other employees of educational corporations, said so in words that are unmistakable. But when the Disability Benefits Law was enacted in 1949, it made no such division. How can we make it?

The order of the Appellate Division should be reversed, the award of the Workmen's Compensation Board annulled and the claim dismissed, with costs in this court and in the Appellate Division against respondent Workmen's Compensation Board.

FULD, J. (dissenting). Claimant worked for Syracuse University as a painter in a building owned by it, off the campus, in the downtown section of Syracuse. The employer is a corporation organized and operated exclusively as an educational institution. The property, known as the University Building, is not used in connection with any of the employer's educational activities, operated, as it is, solely as a profit-making commercial enterprise. Space in the building, a ten-story structure consisting of stores and offices, is leased to tenants, the net rentals being paid into the University's treasury. The building is in the care of a full crew of maintenance people — of whom claim-

ant was one — who are paid from the moneys raised solely from its operation.

In February of 1952, claimant suffered an illness which disabled him for some months. The Workmen's Compensation Board awarded him benefits under the Disability Benefits Law (Workmen's Compensation Law, art. 9), and the Appellate Division unanimously affirmed that determination. The appeal is here, by our leave, to determine the question whether any and all employment by an educational corporation is excluded from the provisions of the Disability Benefits Law, or only that employment which involves services performed in connection with the conduct of its educational activities.

The Disability Benefits Law was passed in 1949, as an addition to the Workmen's Compensation Law, to give to " working men and women * * * the benefits of social insurance against the hazards of sickness and disability not incurred in their employment " (per Governor Dewey, in approving the bill, L. 1949, ch. 600). The new statute, designed to complement the Workmen's Compensation Law and the Unemployment Insurance Law, was to afford protection to disabled employees not otherwise covered by existing statutory provisions.

Subdivision 4 of section 201 of the Workmen's Compensation Law defines an " employer," subdivision 5, an " employee " and subdivision 6, the term " employment." An " employer " means, subdivision 4 declares, " a person * * * [or] corporation * * * who has persons in employment as defined in subdivision six of this section, but *does not include* the state, a municipal corporation, local governmental agency, other political subdivisions or public authority." Subdivision 5 recites that an " employee " is " a person engaged in the service of an employer in any employment defined in subdivision six of this section, except the spouse or a minor child of the employer, and except a minister, priest, rabbi or member of a religious order." And subdivision 6 of the same section (§ 201) — upon which the employer herein relies — provides that " employment " means

" employment in any trade, business or occupation carried on by an employer, *except* that the following shall not be deemed employment under this article: *services performed* for the state, a municipal corporation, local governmental

agency, other political subdivision or public authority, and for any corporation, unincorporated association, community chest, fund or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual ".[1]

Subdivision 6, it is plain, was not intended to define employers covered by the statute or list those " not included " therein. Subdivision 4 had already done that; plainly specifying the employers who are exempted from the statute's coverage, the legislature carefully refrained from mentioning educational corporations. Ergo, an educational corporation is embraced within the term " employer," but not all " employment " on behalf of such a corporation. By subdivision 6, the legislative design becomes manifest: every employer — except the state, a municipal corporation and the other public bodies specifically excluded in subdivision 4 — comes under the Disability Benefits Law, but an employee working for even an included employer, such as an educational corporation, is not encompassed within the statute or entitled to its benefits if the " services performed " by him are in connection with the institution's purely educational activities and for an exclusively educational purpose.

In other words, it is clear, the legislature reached the conclusion that an included employer could have persons working for him in distinct and separate types of " employment." Thus, although a particular employer is within the statute's compass, he is, nevertheless, not subject to contributions for employees who perform " service as farm laborers; casual employment * * *; service as golf caddies; and service during all or any part of the school year or regular vacation periods as a part time worker " (subd. 6). And, as already noted, an educational

1. Also excluded from the term "employment" are "employment subject to the federal railroad unemployment insurance act; service performed on or as an officer or member of the crew of a vessel on the navigable waters of the United States or outside the United States; service as farm laborers; casual employment and the first forty-five days of extra employment of employees not regularly in employment as otherwise defined herein; service as golf caddies; and service during all or any part of the school year or regular vacation periods as a part time worker of any person actually in regular attendance during the day time as a student in an institution of learning."

corporation is also included within the term employer and, by that token, is required to pay benefits to all of its employees, *except* those performing services having to do with its strictly educational activities. In brief, the legislature — with respect to educational corporations (as well as the others specified in subd. 6) — drew a distinction between the terms " employer " and " employment." Had that body intended it to be otherwise, had it intended in 1949 to exclude an educational corporation from the application of the statute, without regard to the services performed by its employees, it could have simply and precisely provided, as it did some years before in the Labor Relations Act (Labor Law, § 715), that the statute " *shall not apply* \* \* \* to employees of charitable, educational or religious \* \* \* corporations ". (See, also, Unemployment Insurance Law [Labor Law, art. 18], § 560, subd. 4.) That language, this court held in *Matter of Trustees of Columbia Univ.* v. *Herzog* (295 N. Y. 605, affg. 269 App. Div. 24), excluded a corporation merely upon a showing that it was organized and operated exclusively for educational purposes.

Furthermore, any possible doubt as to the meaning of the section before us should be resolved in the light of the clearly announced legislative purpose and policy, as reflected in related statutes, to distinguish between the types of services rendered for charitable, educational or religious institutions. That, indeed, has been the scheme of the Workmen's Compensation Law — of which the Disability Benefits Law is a part (art. 9) — ever since 1929. In that year, the legislature amended section 3 of that statute so as to include within its coverage and protection all employees of a charitable, educational or religious institution " except persons engaged in a clerical, teaching or non-manual capacity " (L. 1929, ch. 702, amdg. Workmen's Compensation Law, § 3, subd. 1, group 18). The same sort of distinction was also applied by the legislature very shortly after our decision in the *Herzog* case (*supra*, 295 N. Y. 605) and, in order to avoid its effect, when section 715 of the Labor Law was amended by adding an exception declaring that the statute " shall apply " to employees of an educational (or a charitable or a religious) corporation who are " not engaged " in its educational (or charitable or religious) activities (L. 1946, ch. 463).

Certainly, in the absence of explicit language compelling such a result, we may not assume that the legislature intended to depart from its clearly expressed policy in the enactment of section 201 of the Workmen's Compensation Law, particularly in view of the express embodiment of that policy in section 3 of the same statute. Moreover, the canon is well settled that exemptions from the coverage of a statute of this kind must be strictly construed and will be recognized only where the legislative purpose to grant them indisputably appears. (See *Matter of Emil Hubsch Post, V. F. W.* [*Corsi*], 278 App. Div. 460, affd. 303 N. Y. 682; *Matter of Smith* [*Brooklyn Bar Assn.*], 266 App. Div. 1038, affd. 292 N. Y. 593; *Matter of Batter* [*Mortgage Comm. Servicing Corp.*], 257 App. Div. 546, affd. 282 N. Y. 722.) The legislature's failure to make use of the identical language employed in either the Labor Law provision or section 3 of the Workmen's Compensation Law — a fact remarked by Judge DESMOND (opinion, p. 276) — is neither significant nor meaningful, especially in view of the different approach and definitional pattern of the statutes. The choice of words to express the thought behind them rests, of course, with the lawmakers, and it is enough that they made their design and meaning clear in section 201 as enacted.

To recapitulate, then, the legislative policy is carried forward, the statute reasonably read and its social purpose effectuated if a differentiation is drawn between employment in the institution's profit-making enterprises and employment in its purely educational activities.

The order of the Appellate Division should be affirmed.

FROESSEL, VAN VOORHIS and BURKE, JJ., concur with DESMOND, J.; FULD, J., dissents in an opinion in which CONWAY, Ch. J., and DYE, J., concur.

Order reversed, etc.