In the Matter of the Claim of JACK LANE, Respondent, v ROTODYNE, INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, January 25, 1979

APPEARANCES OF COUNSEL

*Philip J. Caputo* for appellants.

*Rowen, Downes & Cascione, P. C.,* for Jack Lane, respondent.

*Louis J. Lefkowitz, Attorney-General (Daniel Polansky* and *Henriette Frieder* of counsel), for Workers' Compensation Board, respondent.

OPINION OF THE COURT

HERLIHY, J.

The claimant has been awarded supplemental benefits pursuant to section 15 (subd 3, par v) of the Workers' Compensation Law (hereinafter referred to as section 15). The appel-

lants first object upon the ground that there must be a showing that wage earning capacity was impaired solely by claimant's accidental injury of November 18, 1970.

As applicable to this case, section 15 provides, in part, as follows: "v. Additional compensation for impairment of wage earning capacity in certain permanent partial disabilities. Notwithstanding any other provision of this subdivision, additional compensation shall be payable for impairment of wage earning capacity for any period after the termination of an award under paragraphs a, b, c, or d, of this subdivision for the loss or loss of use of fifty per centum or more of a member, provided such impairment of earning capacity shall be due solely thereto * * *. As soon as practicable after the injury, the worker shall be required to participate in a board approved rehabilitation program including retraining; such rehabilitation shall constitute treatment and care as provided in this chapter."

It is undisputed that the claimant sustained 70% loss of the use of his right leg, for which he received a "schedule" award and has been required to participate in rehabilitation. Furthermore, on brief appellants state that "[w]hen the schedule award terminated on January 6, 1975, the claimant still had the same 'impairment' ". Such a conclusion would defeat the objection of appellants; however, they go on to urge that the Legislature intended by the last sentence of the statute as quoted hereinabove to require that a claimant be also impaired from that for which his rehabilitation training prepared him. To complete their position, the appellants argue that the present record does not contain substantial evidence that the original impairment (loss of use of leg) was "solely" the cause of no present employment in jobs for which claimant has retrained or become qualified.

The contention that the Legislature intended to require a further impairment from the original loss is not supported by any fair reading of section 15. It would seem apparent that section 15 contemplates reasonably severe disabilities and, while requiring participation in rehabilitation programs, if practicable, would provide additional benefits when the original disability and its natural consequences continue to impair wage earning capacity after the original term of the award expires. The requirement that the original disability be the sole cause of the continuing reduced earning capacity does not by any reasonable construction require a new and further

impairment after the original term of the award expires. Indeed, rehabilitation is not even a condition precedent to eligibility for supplemental benefits, it only being required "as soon as practicable after the injury".

The bill which added paragraph v to subdivision 3 of section 15 was submitted to the Governor accompanied by a memorandum of State Executive Department which stated that the bill would amend the law to "[r]equire that a worker so compensated be given retraining and rehabilitation to reduce the disability and restore the worker to his optimum earning capacity". On approving the bill, the Governor stated in part: "The bill requires qualifying workers to participate in approved rehabilitation programs thereby helping to hasten recovery and return to the work force." (NY Legis Ann, 1970, p 485.)

It should be noted that to the extent that the appellants object to the position of a referee taken at a hearing on February 14, 1977 that all a claimant has to do was attend rehabilitation in order to be eligible for benefits, the administrative agency was in error.

However, the board in its decision did not adopt the simplistic view of the referee and expressly noted the continuing medical disability of the claimant in its decision. Further, the board considered testimony as to certain potential employment being too difficult for claimant physically and testimony which indicated that the claimant was seeking employment. The record, as a whole, contains substantial evidence that claimant continued to be impaired as to his wage earning capacity and that such impairment was solely caused by his original injury. This is sufficient to support the award of supplemental benefits (Matter of Ortiz v Berkel Elec. Co., 61 AD2d 872).

The contention that rehabilitation is a condition precedent to eligibility for supplementary benefits presents no basis for reversing the award in the present case since the record establishes that in fact the claimant did so participate.

The assertion in the dissent that the impairment from earning established by the original disability must be reconsidered once rehabilitation has proceeded to the point where a new occupation becomes possible for the claimant to perform is not without some merit. However, there is nothing unusual in workers' compensation cases which reveal that a claimant is indeed possessed of skills other than the employment at

which the disability occurred and which is now precluded or severely limited by the disability. In this particular case, the claimant testified that his ability to perform particular employments was limited by his obvious physical defect. To the extent the dissent would suggest that any job at all which a claimant *could* perform after rehabilitation would lessen the impairment of earning capacity, no issue in that regard has been presented by the appellants' objections herein and it goes solely to the amount of an award.

The interpretation of the statute is primarily for the board to undertake in the first instance and inasmuch as it seems to be doing that on a case-by-case basis, the present record does not disclose that its determination is unreasonable or lacks a rational basis as to the instant case.

The decision should be affirmed, with costs to the Workers' Compensation Board against appellants.

MAHONEY, P. J. (dissenting). The issues raised by this appeal must be resolved by interpreting paragraph v of subdivision 3 of section 15 of the Workers' Compensation Law, which authorizes supplemental benefits where a claimant's wage-earning capacity has been impaired due to certain permanent partial disabilities, keeping in mind that the basic intent of section 15 is to compensate a claimant in an amount commensurate with the earning power he would have were it not for his injury (see *Matter of Turner v Hobby Ind. Assn. of Amer.,* 28 AD2d 756, 757). In my view, the statute expressly makes participation in a board-approved rehabilitation program, including retraining, a condition precedent to eligibility for the supplemental benefits, and the statutory phrase "impairment of wage earning capacity" refers to the difference between what the claimant had been earning prior to the permanent partial disability and what he is earning or could reasonably expect to earn in the new occupation for which he was retrained. While the availability of jobs in that occupation and claimant's physical ability to perform the tasks of that occupation, as affected by the permanent partial disability, are relevant to the question of claimant's earning capacity in the new occupation, his refusal to accept offers of employment in that occupation for personal reasons is not since his earning potential can still be determined. To be more precise, if there are jobs available in the occupation for which claimant was retrained and if claimant's permanent partial disability does not prevent him from doing the work entailed in those jobs,

his earning potential in the new occupation can be determined and the loss of earning capacity calculated despite his refusal to accept the available employment. Of course, if he accepts such employment, his actual earnings rather than potential earnings would be used in the calculation. On the other hand, if no jobs were available or if claimant's disability prevented him from doing the work entailed in the available job, his earning capacity in the occupation for which he was retrained would be zero and his loss of earning capacity would be calculated accordingly.

Finally, we note that a claimant is not automatically entitled to supplemental benefits by virtue of a permanent partial disability, but rather, the statute requires an actual impairment of earning power and that impairment must be solely as the result of the disability (Workers' Compensation Law, § 15, subd 3, par v). On this record, the principles applied by the board in its determination cannot be ascertained with any reasonable certainty and, accordingly, the matter should be remitted for further proceedings to determine the supplemental benefits, if any, to which claimant is entitled in accordance with this opinion.

SWEENEY, KANE and STALEY, JR., JJ., concur with HERLIHY, J.; MAHONEY, P. J., dissents and votes to remit in an opinion.

Decision affirmed, with costs to the Workers' Compensation Board against appellants.